E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2686
    Facsimile:  (213) 894-0142
    E-mail:     James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$41,802.00 IN U.S. CURRENCY,<br><br>    Defendant. | No. 2:23-cv-08091<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>21 U.S.C. § 881(a)(6)<br><br>[D.E.A.] |
|---|---|

      Plaintiff United States of America ("the government") brings this claim against the defendant $41,802.00 in U.S. currency, and alleges as follows:

## JURISDICTION AND VENUE

1. The government brings this *in rem* forfeiture action pursuant to 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant is $41,802.00 in U.S. currency (the "defendant currency") seized by law enforcement officers on or about March 31, 2023, from Huy Quoc Doan ("Doan") at Los Angeles International Airport, located at One World Way, Los Angeles, California 90045.

6. The defendant currency is in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Doan and Shirley Banh may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

8. On or about March 31, 2023, Drug Enforcement Administration ("DEA") officers ("DEA Officers") learned that Doan was transporting bulk U.S. currency from Pittsburgh International Airport to Los Angeles International Airport, having flown to Pittsburgh the day before, on or about March 30, 2023.

9. DEA Officers saw Doan exit the arriving flight from Pittsburgh and followed him to the baggage claim area. When DEA Officers saw Doan pick up a metal suitcase, the DEA Officers identified themselves and spoke with Doan. After confirming his identity, Doan agreed to answer the DEA Officers' questions.

10. During their encounter with Doan, DEA Officers noticed that Doan's hands shook uncontrollably as he retrieved his wallet from his backpack, which caused DEA

Officers to believe Doan was likely a drug money courier.

11. When DEA Officers asked Doan to explain why he traveled to Pittsburg and returned to Los Angeles in less than 24 hours, Doan stated that he traveled to Pittsburgh to meet a friend.

12. Doan carried three pieces of luggage: a metal suitcase, a fanny pack, and a backpack. DEA Officers found the defendant currency distributed among the three pieces of luggage.

13. Inside the metal suitcase, DEA Officers found loose bulk U.S. currency layered among towels, wrapped together in a pillowcase.

14. When asked, Doan told DEA Officers that he packed the metal suitcase himself, and that he had counted the currency and that the metal suitcase contained approximately $30,000.00. Subsequently, Doan stated that he had in fact just assumed there was approximately $30,000.00.

15. When asked to identify the owner of the bulk U.S. currency found in the metal suitcase, Doan told DEA Officers that the money did not belong to him, and that he did not know to whom it belonged. Doan refused to provide a contact phone number of the person who gave him the bulk U.S. currency in Pittsburgh, and stated that he did not know what he was supposed to do with the money now that he had returned to Los Angeles.

16. Doan told DEA Officers that a portion of the defendant currency belonged to him, estimating that $7,000 found among the fanny pack and backpack he was carrying was from the sale of a dog. When asked by DEA Officers to explain the sale, Doan was unable to describe the dog or provide any photographs or text messages to confirm the alleged dog's existence.

17. When asked about the source of the defendant currency, Doan said that he was a student who used to work in a restaurant, and that he flew to Pittsburg to collect money from "sales." However, Doan was unable to tell DEA Officers what he meant by "sales."

18. A Los Angeles Police Department Officer deployed his sophisticated trained narcotics-detecting canine, "Zuke," to conduct a sniff test of the defendant currency. Zuke is trained to alert to the presence of heroin, cocaine (base and powder), and methamphetamine.

19. Zuke positively alerted to the defendant currency, demonstrating that the defendant currency was recently in contact with controlled substances.

20. Shirley Banh filed a claim to the defendant currency in the administrative forfeiture proceedings that preceded the filing of this Complaint.

21. The defendant currency bears indicia of drug trafficking, including but not limited to the following, showing the funds are traceable proceeds of drug trafficking or were intended to be used in one or more exchanges for a controlled substance:

    a. Doan purchased his airline ticket two days before his flight to Pittsburg, and returned to Los Angeles within 24 hours. Drug money couriers often purchase tickets shortly before their travel in the belief that a short duration between purchase and travel minimizes their exposure to law enforcement examination.

    b. Doan distributed the defendant currency across three pieces of luggage. Drug money couriers frequently divide the money they are carrying among several locations in luggage in the belief that distribution makes it more difficult for law enforcement to discover.

    c. Doan did not know how much money he was transporting, and stated that he just assumed that the metal suitcase contained $30,000.00. Drug money couriers frequently do not know how much money they are carrying because their controllers do not tell them the total amount that they are given to transport.

    d. Doan carried rubber-banded bundles of mixed denominations of U.S. currency in his fanny pack and backpack, which is a common method for drug money couriers to secure bundles of drug money.

    e. Doan appeared visibly nervous when questioned by officers. Drug money couriers often become nervous when approached by law enforcement officers.

    f. Doan was unable to identify who gave him the defendant currency in Pittsburgh.  Drug money couriers commonly are not given the identity of other drug money couriers involved in the transportation of drug money.

    g. A sophisticated trained narcotics-detecting canine alerted to the defendant currency, indicating that it had recently been in contact with narcotics.

    h. Doan possessed a receipt dated March 14, 2023, for the purchase of one hundred and five cans of "window and door" sealant foam, costing over $500.00.  Drug traffickers commonly use bulk amounts of sealant foam to package narcotics and create air-tight seals intended to evade detection by law enforcement officers.

//

//

//

## CLAIM FOR RELIEF

22. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 *et seq*. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: September 27, 2023

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

  /s/  *James E. Dochterman*
JAMES E. DOCHTERMAN
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

## VERIFICATION

I, Marlon Coronado, hereby declare that:

1. I am a Task Force Office of the Drug Enforcement Administration and am familiar with this investigation.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents, which I believe to be reliable.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed 9-26-2023 in Los Angeles, California.

MARLON CORONADO
Task Force Officer
Drug Enforcement Administration

7